

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2004

# Ramada Franchise Sys v. Jai Shyam Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4303

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Ramada Franchise Sys v. Jai Shyam Inc" (2004). *2004 Decisions.* Paper 300.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/300

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4303


RAMADA FRANCHISE SYSTEMS, INC.,
a Delaware Corporation

v.

JAI SHYAM, INC., a North Carolina Corporation;
RAJENDRA RATHORE, an individual,
                                    Appellants


Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 01-cv-03152)
District Judge:  Honorable Joel A. Pisano


Submitted Under Third Circuit LAR 34.1(a)
September 27, 2004

Before:  RENDELL, FUENTES and SMITH <u>Circuit</u> <u>Judges</u>.

(Filed:  September 30, 2004)


OPINION OF THE COURT


RENDELL, <u>Circuit Judge</u>.

Appellants Jai Shyam, Inc. and Rajendra Rathore (collectively referred to as "JSI")

seek reversal of the District Court's grant of summary judgment for Plaintiff Ramada

Franchise Systems, Inc. ("RFS"), based on the Court's determination that the terms of a Settlement and Relicensing Agreement ("Settlement Agreement") between the two parties were unambiguous and that JSI had violated the terms of the Settlement Agreement. The Court found that this breach by JSI entitled RFS to terminate the Settlement Agreement and collect liquidated damages pursuant to the Settlement Agreement's terms. We have jurisdiction under 28 U.S.C. § 1291. We will affirm.

As we write solely for the parties, our recitation of the facts will be limited to those necessary to our determination. JSI appeals the District Court's judgment, contending that the terms of the Settlement Agreement were ambiguous regarding the requirement for JSI to be under a valid management agreement at the time RFS terminated the agreement. Consequently, JSI argues that the Court improperly decided disputed issues of material fact in favor of RFS and erred in holding that RFS was entitled to liquidated damages under the Settlement Agreement.

The District Court's summary judgment ruling was based on its determination that the terms of the Settlement Agreement were unambiguous, and required JSI to secure and operate under a contract for management services in order to enter into a new license agreement with RFS. JSI's failure to do so in a timely fashion resulted in a breach of the Settlement Agreement.

The question of whether contract terms are clear or ambiguous is a legal one subject to plenary review. See Pennbarr Corp. v. Ins. Co. of N. Am., 976 F.2d 145, 149

2

(3d Cir. 1992). We will affirm a grant of summary judgment on an issue of contract interpretation only if we conclude that the contractual language is subject to only one reasonable interpretation. See Tamarind Resort Assocs. v. Government of the Virgin Islands, 138 F.3d 107, 110-11 (3d Cir. 1998); Sumitomo Mach. Corp. of Am., Inc. v. Allied Signal, Inc., 81 F.3d 328, 332 (3d Cir. 1996); Pennbarr Corp., 976 F.2d at 149.

We turn first to the language of the Settlement Agreement in order to determine if the District Court properly held that it was unambiguous. The portion most relevant to our analysis is Section Five:

> 5. Management Agreement. As a condition of entering into the new license agreement with Jai Shyam, RFS will require that Jai Shyam provide a true copy of an executed management agreement between Jai Shyam and a third party hotel management company. . . . (iv) The management agreement will be attached as an exhibit to the new license agreement, and the new license agreement will contain a stipulation that Jai Shyam's failure to operate the Facility through a hotel management company satisfying the above criteria is an event of default under the new license agreement.

The District Court, in examining the agreement, determined that the overall purpose of the Settlement Agreement was, among other things, for JSI to enter into a new licensing agreement with RFS. This determination was supported in the express language of the Settlement Agreement where JSI proposed to "cure the defaults that cause[d] the termination of the [previous] License Agreement" and to "make the improvements necessary to meet the system standards of RFS for new franchisees and desires to enter into a new license agreement with RFS."

3

In examining the provisions of Section Five of the Settlement Agreement, the District Court concluded that, under the plain meaning of this section, JSI was required to provide an appropriate management agreement as a condition of entering into a new license agreement with RFS. JSI's failure to enter into an appropriate management agreement in a timely fashion was a violation of the Settlement Agreement.

We believe that the District Court was correct in holding that its interpretation of the Settlement Agreement's terms was the only reasonable one. In determining whether contractual language is ambiguous, courts should consider the contract language, the proffers of the parties, and the extrinsic evidence offered in support of each interpretation. See In re New Valley Corp., 89 F.3d 143, 150 (3d Cir. 1996). The District Court found that the explicit language of Section Five created an express and unambiguous obligation for JSI to provide an appropriate management agreement as a condition of entering into a license agreement with RFS.

"In construing contracts and other written agreements, the court must, if possible, ascertain and give effect to the mutual intention of the parties." Hudson County Newspaper Guild v. Jersey Publ'g Co., 93 A.2d 183, 187 (N.J. Super. 1952). The District Court's interpretation of the terms in the Settlement Agreement are further supported by the extrinsic evidence in the record. The nature of the Settlement Agreement was to settle a prior dispute between RFS and JSI, which arose from JSI's noncompliance with quality standards for their Ramada-franchised facility. By the terms of the Settlement

4

Agreement, failure to operate their facility through an appropriate hotel management company is deemed an "event of default" in their licensing agreement. We believe, as the District Court concluded, that the meaning of the language in the Settlement Agreement is unambiguous. By failing to secure and present an appropriate management agreement to RFS in a timely fashion, JSI violated both the terms and the intent of the Settlement Agreement.

Having concluded, in agreement with the District Court, that the language of the Settlement Agreement is unambiguous, JSI's remaining arguments are unpersuasive. JSI contends that the District Court improperly decided disputed issues of material fact against JSI, noting that JSI presented two management contracts to RFS to demonstrate their compliance with the terms of the Settlement Agreement. The first of these contracts, entered into with North-South Management, had an effective date of April 1, 2001, but JSI conceded that the agreement was cancelled by the end of April 2001.[1] The other management agreement presented by JSI, with Newport Group, was entered into on May 14, 2001 and had an effective date of July 1, 2001.

While the parties disputed the validity of the North-South contract and JSI

---

[1]    RFS alleged that a management agreement with North-South was never executed and the document presented to them was a forgery. While the authenticity of this contract remains an issue in dispute between the parties, the District Court properly assumed its validity in its analysis by relying on the fact that the North-South agreement, valid or not, was cancelled by the end of April 2001–a fact that was conceded by JSI in their answers to RFS's interrogatories. This made the dispute regarding the contract's validity immaterial to the District Court's analysis.

disputed the lawfulness of North-South's cancellation of this contract, the District Court properly noted that these factual disputes were immaterial. Neither side disputes that the North-South contract was not operative on May 1, 2001. Based on the facts in the record, when RFS terminated the Agreement with JSI on May 1, 2001, JSI lacked a requisite management agreement for the proposed franchise and was in breach of the Settlement Agreement. The fact that JSI obtained a subsequent management contract with Newport (entered into on May 14, 2001) which was not effective until July 1, 2001, does not alter this conclusion.

JSI further contends that the District Court erred in awarding RFS liquidated damages under the Settlement Agreement because there was no breach. Because we have concluded that the District Court's grant of summary judgment was proper, for the reasons stated above, we will not disturb its ruling on this issue.

Accordingly, we will AFFIRM the Order of the District Court.